807 F.2d 1150
 55 USLW 2333, 6 Fed.R.Serv.3d 783, 36
Ed. Law Rep. 640
 FASSETT, Anne
v.
DELTA KAPPA EPSILON (NEW YORK), The Villanova Chapter of
Delta Kappa Epsilon, Poch, Christopher, Bacha,
Michael, Troy, Christopher L., Turgis,
Bruce E. and Zachea, Kevin.
(Two Cases).
The VILLANOVA CHAPTER OF DELTA KAPPA EPSILON
v.
EVANS, Corbin S., Dallesandro, Nicholas, Bacha, Jr.,
Michael, The Villanova Chapter of Delta Kappa Epsilon, and
Its Individual Members as of September 25, 1982: Bruce
Baltera, Eugene Camposano, Louis D'Onofrio, William J.
Furey, Peter Jirak, David R. Jones, Richard J. Keating, Bob
Mayer, Glenn P. Maykish, Micky McClure, Ken Murphy, William
Scott O'Neil, Michael F. O'Sullivan, Anthony D. Pacaro,
Christopher F. Poch, Stephen T. Schmidt, Christopher L.
Troy, Bruce E. Turgiss, Timothy F. Vallace, Paul
Vandeventer, Christopher J. Wackerman, Peter J. Wynne, Kevin
C. Zacchea.
TROY, Christopher L.
v.
EVANS, Corbin S. and D'Allensandro, Nicholas. (Two Cases).
Appeal of Anne FASSETT.
BUCKLEY, John L., Jr., Administrator of the Estate of
Buckley, Monica T., Deceased
v.
POCH, Christopher F., Troy, Christopher L., Turgiss, Bruce,
Zacchea, Kevin, Hoffend, Daniel, Delta Kappa
Epsilon Doughery Hall, Delta Kappa
Epsilon of New York
v.
The VILLANOVA CHAPTER OF DELTA KAPPA EPSILON, AND Its
Individual MEMBERS AS OF SEPTEMBER 25, 1982: Bruce Baltera,
Eugene Camposano, Louis D'Onofrio, William J. Furey, Daniel
J. Hoffend, Peter Jirak, Richard J. Keating, Bob Mayer,
Glenn P. Maykish, Micky McClure, Ken Murphy, William Scott
O'Neil, Michael F. O'Sullivan, Anthony D. Pacaro,
Christopher F. Poch, Stephen T. Schmidt, Bruce E. Turgis,
Timothy F. Vallace, Paul Vandeventer, Christopher J.
Wackerman, Peter J. Wynne, Kevin C. Zacchea.
POCH, Christopher F., Troy, Christopher L.
v.
EVANS, Corbin S., D'Allensandro, Nicholas and Wynne, Peter
J. (Two Cases)
Appeal of John L. BUCKLEY, Administrator of the Estate of
Monica T. Buckley, Deceased.
The VILLANOVA CHAPTER OF DELTA KAPPA EPSILON
v.
EVANS, Corbin S., Dallesandro, Nicholas, Bacha, Jr.,
Michael, Hoffend, Daniel, The Villanova Chapter of Delta
Kappa Epsilon, and its individual members as of September
25, 1982: Robert J. Ackerman, Bruce Baltera, Thomas C.
Brockwell, Eugene Camposano, Kevin Connor, Joseph F.
Delaney, Louis D'Onofrio, Richard J. Dulcey, Daniel M.
Farrell, Sean P. Flanagan, William J. Furey, Paul A.
Gentile, Daniel J. Hoffend, Peter Jirak, David R. Jones,
Richard J. Keating, Attila A. Koc, Bob Mayer, Glenn P.
Maykish, Micky McClure, Steven M. McEvoy, John J. McGee,
Thomas M. Mulroy, Ken Murphy, Ronald A. Nauman, William
Scott O'Neil, Michael F. O'Sullivan, Anthony D. Pacaro,
Christopher F. Poch, Henry Rohrer, Stephen T. Schmidt,
Joseph A. Torrisi, Christopher L. Troy, Bruce E. Turgiss,
Timothy F. Vallace, Paul Vandeventer, Christopher J.
Wackerman, James T. Wilson, Peter J. Wynne, Kevin C. Zacchea.
Appeal of Bruce TURGISS (Two Cases).
BUCKLEY, John L., Jr., Administrator of the Estate of
Buckley, Monica T., Deceased
v.
POCH, Christopher F., Troy, Christopher L. Turgiss, Bruce,
Zacchea, Kevin, Bacha, Michael, Jr., Hoffend,
Daniel, Delta Kappa Epsilon Doughery
Hall, Delta Kappa Epsilon of New York
v.
The VILLANOVA CHAPTER OF DELTA KAPPA EPSILON AND Its
Individual MEMBERS AS OF SEPTEMBER 25, 1982: Robert J.
Ackerman, Bruce Baltera, Thomas C. Brockwell, Eugene
Camposano, Kevin Connor, Joseph F. Delaney, Louis D'Onofrio,
Richard J. Dulcey, Daniel M. Farrell, Sean P. Flanagan,
William J. Furey, Paul A. Gentile, Daniel J. Hoffend, Peter
Jirak, David R. Jones, Richard J. Keating, Attila A. Koc,
Bob Mayer, Glenn P. Maykish, Micky McClure, Steven M.
McEvoy, John J. McGee, Thomas M. Mulroy, Ken Murphy, Ronald
A. Nauman, William Scott O'Neil, Michael F. O'Sullivan,
Anthony D. Pacaro, Christopher F. Poch, Henry Rohrer,
Stephen T. Schmidt, Joseph A. Torrisi, Bruce E. Turgis,
Timothy F. Vallace, Paul Vandeventer, Christopher J.
Wackerman, James T. Wilson, Peter J. Wynne, Kevin C. Zacchea.
 Nos. 85-1652, 85-1653, 86-1102 and 86-1103.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 15, 1986.
Decided Dec. 5, 1986.
As Amended Dec. 10, 1986.
Rehearing and Rehearing In Banc Denied Jan. 8, 1987.
 
 Robert E. Slota (argued), Murphy and Slota, Bryn Mawr, Pa., for appellant Fassett.
 John J. McAuliffe, Jr., Philadelphia, Pa., for appellant Buckley.
 David L. Steck (argued), Clifford A. Goldstein, Rawle & Henderson, Philadelphia, Pa., for appellee Bacha.
 Donald J.P. Sweeney, Sweeney, Sheehan & Spencer, Philadelphia, Pa., for appellees Flanagan, McEvoy, Brockwell and Wynne.
 Benjamin E. Zuckerman, Sherr, Moses & Zuckerman, P.C., Norristown, Pa., for appellee Poch.
 Joseph P. Connor, III, Connor and Weber, P.C., Philadelphia, Pa., for appellee Zacchea.
 Edwin L. Scherlis, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, Pa., for appellees Ackerman, Delaney, Dulcey, McGee and Rohrer.
 John J. O'Brien, III (argued), O'Brien and O'Brien Associates, Philadelphia, Pa., for appellee Turgiss.
 William F. Sullivan, Jr., Post & Schell, P.C., Philadelphia, Pa., for appellee D'Onofrio.
 Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellee Evans.
 John A. Orlando, White and Williams, Philadelphia, Pa., for appellee Baltera.
 Dean F. Murtagh, German, Gallagher & Murtagh, Philadelphia, Pa., for appellee Pacaro.
 John F. Dougherty, Jr., Dougherty & Stonelake, Philadelphia, Pa., for appellee Hoffend.
 David M. McCormick, Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., for appellee Nauman.
 Before ADAMS, STAPLETON, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 The four cases before this court arise out of a tragic accident whose fact pattern is disturbingly common. In the early morning hours of Sunday, September 26, 1982, seventeen year old Anne Fassett, nineteen year old Monica Buckley and eighteen year old Corbin Evans were involved in a traffic accident when Evans, while driving his car, collided with a pickup truck operated by Nicholas D'Allessandro. Evans, Fassett, and Buckley had just left a fraternity sponsored party where Evans had allegedly consumed an indeterminate quantity of alcohol. Monica Buckley was killed in the accident, and Anne Fassett was rendered a quadriplegic.
 
 
 2
 Anne Fassett brought a diversity action in the Federal District Court for the Eastern District of Pennsylvania against Christopher Poch, Bruce Turgiss, Kevin Zacchea, Christopher Troy and Michael Bacha. John Buckley, Jr., the administrator of the estate of Monica Buckley, brought a similar suit against defendants Poch, Turgiss, Zacchea, Troy and Daniel Hoffend.[1] The two cases (before this court as appeals 85-1652 and 85-1653) were consolidated for purposes of trial before the Honorable Louis C. Bechtle. Fassett and Buckley sought to hold the named defendants liable for the injuries they suffered under Pennsylvania tort law.
 
 
 3
 The named defendants filed a series of cross claims against each other, and they also impleaded a number of third party defendants. Corbin Evans and Nicholas D'Allessandro, the drivers of the two vehicles, were joined as third party defendants in both actions.
 
 
 4
 In the Fassett action, Daniel Hoffend was joined as a third party defendant, and defendant Michael Bacha impleaded individual members of the Villanova Delta Kappa Epsilon fraternity.
 
 
 5
 Similarly, in the Buckley action, Christopher Troy impleaded Michael Bacha and numerous individual members of the Villanova Delta Kappa Epsilon fraternity.
 
 
 6
 Many of these first and third party defendants filed motions for summary judgment. The district court directed Fassett and Buckley (as well as any defendants who raised claims against third parties) to submit written "offers of proof" to explain the basis of their theory of liability against each of the defendants. These offers of proof were designed to assist the court in ruling on the summary judgment motions. Appendix at 80. After the written offers of proof were submitted, the court held a hearing at which it allowed these offers of proof to be supplemented orally.
 
 
 7
 The offers of proof alleged that Evans had been drinking while in the apartment leased by defendants Michael Bacha, Kevin Zacchea, Christopher Troy, and Bruce Turgiss, and that these four defendants had agreed to allow their apartment to be used as the site for a fraternity party where alcohol would be served to approximately 200 minors. More specifically, it was alleged that Troy was an organizer of the party and that he served as one of the bartenders. It was alleged that Turgiss was a "passive organizer" of the party and that he had worked the door.[2] It was alleged that Bacha, who was not a member of the Villanova Delta Kappa Epsilon fraternity, nevertheless acted in concert with his fellow roommates and invited the fraternity to use his apartment for a party during which intoxicants were served to minors.
 
 
 8
 It was alleged that Poch was the president of the fraternity and an organizer of the party. Additionally, it was alleged that he was one of the people who drove into Maryland to purchase alcohol for the party. Although Hoffend was not at the party, it was alleged that he was the treasurer of the fraternity and that he wrote a blank check to be used for the purchase of the alcohol consumed at the party.[3]
 
 
 9
 The district court concluded that, as a matter of Pennsylvania law, a defendant would have had to have physically served (i.e. directly handed) an alcoholic beverage to Evans in order to be civilly liable. Therefore, as to each individual defendant, unless it was specifically alleged that he had acted as a bartender or otherwise served alcohol to guests on the night in question, the court on September 18, 1985 granted summary judgment in his favor.[4]
 
 
 10
 Troy was the only remaining first party defendant in both cases. Rather than proceed to trial against Troy alone, Fassett and Buckley, pursuant to Fed.R.Civ.P. 41(a)(1), filed a stipulation of dismissal without prejudice against Troy. Because Troy was the sole remaining first party defendant, Fassett and Buckley assumed that this action would dispose of all outstanding claims (against both Troy and the third party defendants he had named) and thereby render the district court's earlier order final for purposes of appeal.
 
 
 11
 Fassett filed a timely notice of appeal from the district court's order of September 18, 1985, which had granted summary judgment in favor of Poch, Bacha and Zacchea, and which had dismissed the complaint against Turgiss. On the same day, Buckley also filed her notice of appeal, in which she stated that she was appealing the order granting summary judgment to all of the first party defendants in her suit and the order "granting summary judgment in favor of Michael Bacha, dismissing the third party complaint as to all of the remaining third party defendants ..." Appendix at 575.
 
 
 12
 It is apparently on the basis of this latter statement in Buckley's notice of appeal that the third party defendants were originally considered to be parties to this appeal. The vast majority of the third party defendants filed motions for dismissal with this court. These motions were granted by a motions panel of this court "without prejudice to defendants' rights to reinstate third party complaints in the event the district court's orders are reversed."[5] Because the appeals against the third party defendants were dismissed, we did not consider any briefs which had previously been filed by them. As a consequence, no third party defendants appeared at oral argument of these appeals.
 
 
 13
 After the record was complete for purposes of appeal, Fassett and Buckley filed a joint motion, pursuant to Fed.R.App.P. 10(e), to augment the record on appeal with, inter alia, certain portions of the deposition testimony of one Christopher Wackerman. Wackerman testified that, on the night in question, he had seen defendant Bruce Turgiss serving alcohol to party guests. This deposition was not filed of record at the time the district court rendered its final judgment.
 
 
 14
 By order dated January 14, 1986, the district court granted the motion to augment the record. Consolidated appeals numbered 86-1102 and 86-1103 raise Bruce Turgiss' separate claim against Fassett and Buckley, that the district court erred in ordering this augmentation of the record on appeal with material that was not before the district court when its final decision was rendered.
 
 I.
 
 15
 Before considering the arguments raised by Fassett and Buckley, we address sua sponte our jurisdiction. Although the parties have not briefed the issue, we cannot ignore matters that bring into question the existence of federal jurisdiction. Lake County Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 398, 99 S.Ct. 1171, 1175, 59 L.Ed.2d 401 (1979). Therefore, we must determine whether Fassett and Buckley's voluntary dismissal of the claims against the remaining original defendant Troy, left plaintiffs with a final appealable order.
 
 
 16
 Judge Bechtle's order entered September 18, 1985 (granting judgment in favor of all first party defendants except Troy) was not a final order when entered. The order became final, however, when on September 23, 1985, the complaints against Troy were dismissed. This dismissal left no outstanding issues or parties before the district court. Therefore, the notices of appeal, filed on October 15, 1985 were timely and effective notices of appeal from the September 18th order which had become final.
 
 
 17
 The dissent raises the possibility that the dismissal of the complaint against Troy, which was styled as being "without prejudice," may not have effectively and finally disposed of all parties. We cannot agree.
 
 
 18
 In the present case, although all parties had stipulated to a dismissal without prejudice against Troy, the two-year Pennsylvania statute of limitations had already run as of the time of Troy's dismissal. The automobile accident occurred on September 26, 1982, and the two-year statutory period for filing the claim had run as of September 26, 1984. See 42 Pa.Cons.Stat.Ann. Sec. 5524(2) & (7). Therefore, when Fassett and Buckley dismissed their causes of action against Troy, on September 23, 1985, their actions against Troy were effectively barred. Because Fassett and Buckley retained no viable cause of action against Troy, we conclude that the dismissal, which was nominally without prejudice, was for our purposes, a final dismissal. See Carr v. Grace, 516 F.2d 502 (5th Cir.1975) (holding that the running of the statute of limitations made a "without prejudice" dismissal final for purposes of 28 U.S.C. Sec. 1291).
 
 
 19
 Although this court has, in dictum, expressed displeasure over what it terms "indirect attempts" at avoiding the finality rule, see, e.g., Sullivan v. Pacific Indemnity Co., 566 F.2d 444, 445 (3d Cir.1977), we do not believe that, under the circumstances outlined above, this case presents such a problem. Certainly, we will not permit an indirect review of interlocutory rulings that may not be subject to direct review. But it would be anomolous to hold that a plaintiff had no right to appeal the dismissal of all but one of his claims after that one claim not initially dismissed, had thereafter been voluntarily and finally abandoned.[6]
 
 
 20
 As Judge Wallace, writing for the court in Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980), stated, after citing numerous authorities which hold to the same effect as we hold here, "These cases provide clear examples of giving a practical rather than a technical construction to the finality rule, without sacrificing the considerations underlying that rule. There is no danger of piecemeal appeal confronting us if we find jurisdiction here, for nothing else remains in the federal courts."
 
 
 21
 The dissent argues, however, that the order was not final because a statute of limitations defense must be affirmatively pleaded.[7] We find this argument unpersuasive. We assume that Troy would fail to plead a statute of limitations defense only if he were unaware of its availability. We believe that the mere theoretical possibility that Fassett and Buckley will reinstate an untimely cause of action in a federal forum, and that Troy would fail to plead a statute of limitations defense if so named, is so unrealistic in the posture of the present case, that it cannot operate to divest this court of appellate jurisdiction.
 
 
 22
 Indeed, even if we were to accept the reasoning of the dissent, which we do not, that a dismissal without prejudice of a claim that could never have been timely refiled is not a final disposition of that claim, we would still hold that we are vested with jurisdiction in this case.
 
 
 23
 In Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir.1983), this court held that, except in a few very specific situations,[8] a notice of appeal from a non-final order will take effect when, due to subsequent events, the previous non-final order is rendered final. Even assuming arguendo, that the dismissal without prejudice on September 23, 1985, was not itself sufficient to render the September 18th order final, the representations of counsel made during oral argument were more than sufficient to constitute a "subsequent event" which rendered the September 18th order a final one.
 
 
 24
 At oral argument, counsel for Fassett and Buckley informed us that they had a pending action in state court against Troy. They dismissed their federal claim against Troy without prejudice in order to prevent Troy from pleading an effective res judicata defense to the action in state court, not to reinstitute the federal suit against him. Counsel for Fassett and Buckley conceded that any rights they once had against Troy could not be reasserted in a federal forum because of the statute of limitations bar, and indeed they represented that they had no intention of reinstating any such federal action.
 
 
 25
 The dissent focuses on that portion of the oral argument where we explored the matters leading up to the dismissal of Troy without prejudice. However, the colloquy that took place at oral argument was far more extensive than that to which the dissent refers. Taken in full context, the tapes of oral argument reveal that:
 
 
 26
 (1) originally certification for an interlocutory appeal was sought from the district court but was denied;
 
 
 27
 (2) Troy was dismissed without prejudice because there was concern that an immediate "with prejudice" dismissal might affect the pending state action;
 
 
 28
 (3) the statute of limitations had run prior to Troy's dismissal;(4) the action could not be reinstated against Troy because of the bar of the statute;
 
 
 29
 (5) if we were to dismiss the appeal, Fassett and Buckley would dismiss against Troy with prejudice; and
 
 
 30
 (6) as a pragmatic matter, no action in any event would have been brought against Troy because of the trial expense involved and the limited insurance under which Troy was covered.
 
 
 31
 Thus, taken in full context, there was no question but that Fassett and Buckley were "standing upon" Troy's dismissal. See Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir.1976) (an order which dismisses a complaint without prejudice is final and appealable if plaintiff declares his intention to take no further action). By standing upon Troy's dismissal, no doubt remained as to the finality of the September 18th order.
 
 
 32
 Therefore, even if the entry of a dismissal without prejudice after the statute of limitations had already expired was not itself sufficient to render the September 18th order a final one, that order would have become final when counsel renounced their claims against Troy. Under Fed.R.App.P. 4(a)(2) and the Cape May Greene reasoning, the "premature" notices of appeal filed on October 15, 1985 would have become effective upon the final abandonment of the claims against Troy, and appellate jurisdiction would then have vested in this court.
 
 
 33
 We are satisfied that under the circumstances present here, we have jurisdiction. Were we to hold otherwise, the very substantial claims of the plaintiffs would be immunized from judicial review forever.
 
 II.
 
 34
 A federal district court sitting pursuant to diversity jurisdiction must apply the choice of law rules of the state in which it is located. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1942). The district court concluded that Pennsylvania has the most significant contacts with the events giving rise to this lawsuit, 625 F.Supp. at 330 n. 8, and this holding is unchallenged on appeal. We therefore look to Pennsylvania state law in answering all substantive questions. Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 35
 The standard of appellate review for a district court's award of summary judgment is well settled: we apply the same test that the district court should have utilized initially. As to factual matters, all inferences to be drawn must be viewed in the light most favorable to the appellant. We have plenary review over the district court's conclusions regarding the applicable Pennsylvania law. To sustain a grant of summary judgment we must conclude that no genuine issue as to any material fact remains for trial, and appellees are entitled to judgment as a matter of law. Gans v. Mundy, 762 F.2d 338, 340 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 537, 88 L.Ed.2d 467 (1986).
 
 
 36
 The major question before us is a legal one which in turn gives rise to disputed factual issues. We must decide whether Pennsylvania's social host liability law is so limited in scope that Fassett and Buckley have failed to state a valid cause of action against any of the defendants in this case. The district court concluded that Pennsylvania would impose social host liability only on those individuals who served, i.e. physically handed, alcoholic beverages to minors. 625 F.Supp. at 336. Because we find that this conclusion as to the scope of Pennsylvania social host liability law is unduly restrictive, we hold that the district court erred in rendering summary judgment in favor of the defendants.
 
 III.
 
 37
 Social host liability for the actions of intoxicated guests is a relatively new phenomenon. Although some commentators have noted a trend toward the expansion of social host liability, see, e.g., Note, Social Host Liability for Guests Who Drink and Drive: A Closer Look at the Benefits and the Burdens, 27 Wm. & Mary L.Rev. 583 (1986), the various states have not been uniform in their acceptance of this new legal concept. Because we must apply the law of Pennsylvania, opinions from other jurisdictions, while of some limited value in predicting the course Pennsylvania would take, cannot form the bulwark of our analysis. Our decision rests on a close examination of the three Pennsylvania Supreme Court precedents that deal with the question of social host liability: Manning v. Andy, 454 Pa. 237, 310 A.2d 75 (1973), Klein v. Raysinger, 504 Pa. 141, 470 A.2d 507 (1983) and Congini v. Portersville Valve Co., 504 Pa. 157, 470 A.2d 515 (1983).
 
 
 38
 Manning v. Andy was the first Pennsylvania Supreme Court case to consider imposing civil liability on a social host for the tortious conduct of a person he had served. Manning involved an employer who, according to the complaint, served alcohol at a social function to a visibly intoxicated employee. The employee was involved in an automobile accident, and a passenger of the employee sued the employer. The Pennsylvania Supreme Court declined to impose civil liability on the employer as a non-licensed person (as distinguished from licensed proprietors of bars) who furnished intoxicants to others for no remuneration, stating that such a decision was "best left to the legislature." 310 A.2d at 76.
 
 
 39
 In a concurring opinion, Justice Pomeroy expressed the view that the passenger's complaint did not state a cause of action because the complaint was couched in terms of a violation of the State Liquor Code, which is primarily concerned with regulating the actions of licensees. He went on to argue, however, that a cause of action could be stated under ordinary tort law, and such a cause of action could result in liability for a person who "serves liquor to one whom he knows or should know to be intoxicated, and who he knows or should know is about to drive an automobile or engage in some other activity involving the potentiality of harm to himself or to others, with resulting damage." 310 A.2d at 77.
 
 
 40
 Manning remained the controlling precedent in Pennsylvania for ten years, until the companion cases of Klein v. Raysinger and Congini v. Portersville Valve Co. were decided in 1983. Klein specifically limited the Manning holding:
 
 
 41
 In Manning we held only that Section 493(1) of the Liquor Code, 47 P.S. 4-493(1), did not create a cause of action against non-licensed persons who furnish intoxicants for no renumeration [sic]. We did not decide the issue of whether a non-licensed host could be subject to a cause of action in negligence.
 
 
 42
 470 A.2d at 508 n. 6. By so distinguishing Manning, the Court concluded that it was faced with a question of first impression as to whether to recognize a cause of action in negligence against a social host who served alcohol to a visibly intoxicated person, when the host knows or should know that the guest intends to drive a motor vehicle.
 
 
 43
 Klein v. Raysinger involved a couple (the Kleins) who had been injured in an automobile accident. Raysinger, the driver of the automobile with which they collided, was allegedly intoxicated. As part of their action, the Kleins brought suit against the Gilligan Family. The Gilligans were non-licensees (i.e. social hosts) who were charged with negligence in serving intoxicants to Raysinger, their adult guest. The court concluded that it would not impose social host liability where an adult guest had been served intoxicants. "[T]he great weight of authority supports the view that in the case of an ordinary able bodied man it is the consumption of alcohol, rather than the furnishing of the alcohol, which is the proximate cause of any subsequent occurrence." 470 A.2d at 510 (emphasis added).
 
 
 44
 In the companion case of Congini v. Portersville Valve Co., however, the Court found that a cause of action in negligence did lie against a corporate defendant that had sponsored a party at which a minor guest had become intoxicated. In Congini, the plaintiff, Mark Congini was, at the time of the accident, an eighteen year old[9] employee of defendant Portersville Valve Company (Portersville). Congini attended a company sponsored Christmas party at the Portersville plant. Alcohol was available at the party, and Congini consumed an undisclosed amount of alcohol before departing. While driving home from the party, Congini became involved in a traffic accident that left him totally and permanently disabled.[10] 470 A.2d at 516. The Pennsylvania Supreme Court, in reversing the lower court's judgment in favor of Portersville, held that the Congini facts constituted negligence per se for the purpose of establishing civil liability under Pennsylvania tort law.
 
 
 45
 Thus we can conclude from the Pennsylvania cases which have dealt with this subject, that whereas adult guests and those third parties whom they have injured have no cause of action against their social (non-licensed) host, minors who are served liquor and who in turn injure others are regarded and treated differently. As we construe these cases, we conclude that the Pennsylvania Supreme Court would permit intoxicated minors and third parties injured by them to maintain a cause of action against those who have made alcohol available to the minors.
 
 
 46
 With these cases and principles forming the backdrop to this appeal, we are called upon to decide some basic questions about the extent of social host liability in Pennsylvania. First, does Congini apply where it is minors who are serving alcohol to minors? Second, does Congini establish liability not only for the furnishers of alcohol, but also for their accomplices? Third, if Congini does establish liability for accomplices, what are the limits of this accomplice liability?
 
 A.
 
 47
 The district court concluded that Pennsylvania would recognize social host liability against minors who served intoxicants to minors, and we agree. In its discussion concerning minors (Congini, 470 A.2d at 518), the Congini court cites with approval the standards for negligence it adopted in Kuhns v. Brugger, 390 Pa. 331, 135 A.2d 395, 401 (1957). These standards place minors into three categories based on their ages:
 
 
 48
 [M]inors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.
 
 
 49
 135 A.2d at 401 (emphasis added). We are confident, as was the district court, that Pennsylvania would use the Kuhns v. Brugger standards and find that the minor defendants in this case, all of whom were above fourteen years of age at the time of the party, were presumptively capable of negligence, and therefore were potentially liable as social hosts.[11] We therefore conclude that Congini does apply to those circumstances in which minors serve alcohol to minors.
 
 B.
 
 50
 The district court concluded that Pennsylvania would not extend civil liability under the social host doctrine to cover civil conspirators or accomplices. 625 F.Supp. at 333-34. We hold that the district court erred in this conclusion. Accomplice liability was not only approved in Congini, it served as a necessary basis for holding the defendant Portersville liable in that case.
 
 
 51
 The Pennsylvania Supreme Court's decision in Congini, which imposed civil liability on the defendant corporation Portersville, involved a three-step reasoning process. First, the Court looked to the Pennsylvania Crimes Code to determine whether the actions of Congini, as a minor who consumed alcohol, constituted a criminal offense. Under 18 Pa.Cons.Stat.Ann. Sec. 6308, a person under age 21 commits a summary offense if he "attempts to purchase, purchases, consumes, possesses or transports any alcohol ..." A minor who consumes alcohol in Pennsylvania, therefore, has violated a provision of the Pennsylvania Crimes Code.
 
 
 52
 The Court's second step in its analysis was to determine whether this violation of the Crimes Code established a standard of conduct to be applied in a civil action. To answer this question, the Pennsylvania Supreme Court looked to Section 286 of the Restatement (Second) of Torts for guidance.[12] 470 A.2d at 517-18. See also Miller v. Hurst, 302 Pa.Super. 235, 448 A.2d 614, 618 (1982) (applying Restatement Sec. 286 analysis to hold that violating Pennsylvania's law requiring leashes for dogs constitutes negligence per se ).
 
 
 53
 Congini held that Sec. 6308 of the Pennsylvania Crimes Code was evidence of a legislative intent "to protect both minors and the public at large from the perceived deleterious effects of serving alcohol to persons under twenty-one years of age," 470 A.2d at 518, and it therefore held that a violation of Sec. 6308 would constitute negligence per se in a civil negligence action.[13]
 
 
 54
 Although Congini did not explicitly address the issue, we observe that 18 Pa.Cons.Stat.Ann. Sec. 6308 does not impose any requirements or standards of conduct on adults. Section 6308 seeks to regulate the behavior of only minors with regard to the consumption of alcohol; it imposes no duty on adults to refrain from supplying minors with alcohol. However, as Congini noted, "under Section 306 of the Crimes Code ... an adult who furnishes liquor to a minor would be liable as an accomplice to the same extent as the offending minor." 470 A.2d at 517 (emphasis added). Therefore, the third and final step of the Congini analysis, the step that enabled the court to find that a cause of action was stated against Portersville, necessarily relied on Portersville's status as an "accomplice."
 
 
 55
 Pennsylvania's accomplice statute, 18 Pa.Cons.Stat.Ann. Sec. 306, provides that a person is an accomplice of another in the commission of an offense if:
 
 
 56
 (1) with the intent of promoting or facilitating the commission of the offense, he:
 
 
 57
 (i) solicits such other person to commit it; or
 
 
 58
 (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
 
 
 59
 (2) his conduct is expressly declared by law to establish his complicity.
 
 
 60
 18 Pa.Cons.Stat.Ann. Sec. 306 (emphasis added). The "offense" committed in this case was the consumption of alcohol by a minor in violation of 18 Pa.Cons.Stat.Ann. Sec. 6308.[14]
 
 
 61
 Therefore, it is the minor who, under the Congini analysis, must be characterized as the "principal" in the crime. Any other person to whom the criteria of the accomplice statute, 18 Pa.Cons.Stat. Sec. 306, applies, may then be held to be the minor's accomplice.
 
 
 62
 Thus, when the accomplice statute is applied to the facts of cases such as the instant action, it is clear that two things must be established to hold a defendant civilly liable: (1) the alleged accomplice must have had an intention to promote or facilitate the consumption of alcohol by a minor (the accomplice's principal) and (2) the alleged accomplice must have aided, agreed or attempted to aid in the minor's consumption of alcohol. In the instant case, if Evans consumed alcohol at the fraternity party, any other individuals present who intended to, and did, aid him in that consumption, could come within the cause of action asserted by Fassett and Buckley. The extent and limitations of such a cause of action are addressed in the following section of this opinion.
 
 
 63
 However, the defendants have contended throughout this litigation that we should not extend the scope of social host liability, but should rather follow the decision of the district court, which restricted liability to direct servers of intoxicants. They urge us to focus on only one particular phrase in the Congini opinion, a phrase which they claim limits social host liability to direct servers:
 
 
 64
 Under our analysis, an actor's negligence exists in furnishing intoxicants to a class of persons legislatively determined to be incompetent to handle its effects. It is the person's service which forms the basis of the cause of action ...
 
 
 65
 470 A.2d at 518 (emphasis added).
 
 
 66
 The defendants contend that this case should turn on how the term "furnisher" is defined. Following this reasoning, they would have us conclude, as the district court did, that "furnishers" are only those who physically hand alcohol to a minor and that, as a consequence, any defendant who was one step or more removed from that act should not be liable.
 
 
 67
 We reject this argument. Viewing the Congini opinion as a whole, it is clear to us that the language used in this part of the opinion was intended to make no more than a narrow point, rather than to serve as a conclusory statement defining the parameters of liability. This isolated phrase could not have been intended to approve just one basis for establishing negligence ("furnishing" liquor) to the exclusion of other possible bases (such as, for example, "purchasing" the liquor consumed).
 
 
 68
 We observe that we are not alone in reading Congini to hold that, in Pennsylvania, liability can extend beyond the mere furnishing or serving of liquor. In Meyers v. Koman, 36 Pa.D. & C.3d 229 (C.P. of Washington County 1984), a party was planned by Kurtis Koman, David Volk, Jr. and Chris Gumbert at the residence of Gumbert's parents. Philip Evans, an eighteen year old, attended the party and consumed intoxicants there. Evans left the party and operated an automobile accompanied by two passengers, one of whom was the plaintiff, Craig Meyers. Meyers alleged that because of Evans' intoxicated condition, Evans lost control of his automobile and Meyers sustained injuries.
 
 
 69
 Defendant Koman argued that, under Congini, he could not be held liable for Meyers' injuries because there were no allegations that Koman had furnished alcohol to minor Evans. The court rejected this view:
 
 
 70
 To predicate liability only if it is alleged and proved that the person physically handed a glass of beer to a minor is a misconception of the principle enunciated in Congini.
 
 
 71
 Plaintiff has alleged that Koman, Volk and Gumbert purchased the intoxicants and transported them to the Gumbert residence. It is averred that Koman supplied the tap for the keg. It is further stated that defendants participated in planning the party and dispensing the beer. These acts of defendants are sufficient to make out a case in which preliminary objections cannot be sustained.
 
 
 72
 Id. at 231-32.
 
 
 73
 Like the court in Meyers, we reject the narrow reading of Congini urged upon us by defendants. In our view, Congini represents a much broader approach to the pervasive problem of underage drinking than the defendants acknowledge. We conclude that the district court erred in failing to hold that Pennsylvania law recognizes a cause of action against accomplices who assist in a minor's consumption of intoxicants.
 
 C.
 
 74
 We come to the final question to be answered in determining the extent of social host liability in Pennsylvania. Having concluded that those who aid minors in their consumption of intoxicants may be held civilly liable under Pennsylvania law, our task now is to identify the limits of such liability. In order to do so, we must determine both the nature and amount of aid or assistance that is required of an accomplice before civil liability will be imposed.
 
 
 75
 Because Congini had relied upon a criminal statute, 18 Pa.Cons.Stat.Ann. Sec. 306, see Congini, 470 A.2d at 517, to support its holding that an accomplice (Portersville) could be held civilly liable, we too begin our analysis with Pennsylvania's accomplice statute, Sec. 306. As we have previously discussed, it is clear that under 18 Pa.Cons.Stat.Ann. Sec. 306, two things must be established to hold a defendant civilly liable: (1) a defendant must have had an intention to promote or facilitate the consumption of alcohol by a minor (the accomplice's principal); and (2) he (the accomplice) must have aided, agreed or attempted to aid in the minor's consumption of alcohol.
 
 
 76
 We recognize, however, that the liability which is sought to be imposed is civil and not criminal in nature. Therefore, in giving content to the terms "aiding, agreeing or attempting to aid" in a minor's consumption of alcohol, we must look to standards governing civil liability. In this circumstance, we are satisfied that the Pennsylvania courts, which in general follow the Restatement of the Law, would once again look to the Restatement for instruction.
 
 
 77
 Reference to the Restatement of Torts reveals that Sec. 876 deals with situations where liability attaches to an actor who harms a third party by acting in concert with another.[15] The elements of Restatement Sec. 876 and of 18 Pa.Cons.Stat.Ann. Sec. 306, when compared with each other, appear essentially the same. A significant difference, however, is the requirement in Restatement Sec. 876 that the assistance given to another be substantial. No such qualification appears in the Pennsylvania Crimes Code.
 
 
 78
 The recognition of this distinctive element leads us to still another inquiry, i.e. how should substantiality be determined? Once that question is answered, we will have bridged the gap between the criminal accomplice statute and the requirements for establishing accomplice liability, but in a civil context. In doing so, we will have given definition to the extent and limits of civil accomplice liability in a social host cause of action.
 
 
 79
 We have found the decision of the Court of Appeals for the D.C. Circuit, in Halberstam v. Welch, 705 F.2d 472 (D.C.Cir.1983) (Wald, J.), to be helpful in answering the question of how substantiality should be determined. In Halberstam, the appellant, Hamilton, was the live-in companion of a burglar, Welch. In the course of Welch's burglary of Halberstam's home, Welch killed Michael Halberstam. An action for wrongful death and survival was brought by Elliott Halberstam, Michael's personal representative, against both Welch and Hamilton alleging that they had engaged in a joint criminal venture and conspiracy during which the murder took place. The court discussed two theories of liability under which Hamilton could be held liable: civil accomplice (i.e., aiding and abetting by substantial assistance) and civil conspiracy.[16] Because District of Columbia precedent was "somewhat sparse in the area of concerted torts," id. at 479, the Halberstam court, in reaching its conclusion, looked to the very provisions of the Restatement of Torts on which we rely here.
 
 
 80
 The Court of Appeals for the D.C. Circuit held that the district court had not erred in holding Hamilton liable for the tortious conduct of primary wrongdoer Welch. Judge Wald, in writing for the court, concluded: "the implications of tort law ... as a supplement to the criminal justice process and possibly as a deterrant to criminal activity cannot be casually dismissed." 705 F.2d at 489.
 
 
 81
 We draw from Halberstam, that where a criminal act which results in subsequent civil liability has been committed, that any aid or assistance given to the primary wrongdoer must be substantial in order for civil liability to attach to the aider, and that substantiality is to be measured by the factors enumerated in Restatement (Second) of Torts Sec. 876(b), comment d.
 
 
 82
 The six factors suggested by the Restatement for making the determination of whether the assistance rendered by an accomplice is "substantial" include:
 
 
 83
 a. the nature of the act encouraged;
 
 
 84
 b. the amount of assistance given by the defendant;
 
 
 85
 c. the defendant's presence or absence at the time of the tort;
 
 
 86
 d. the defendant's relation to the other tortfeasor;
 
 
 87
 e. the defendant's state of mind; and
 
 
 88
 f. the foreseeability of the harm that occurred.
 
 
 89
 Id.[17] Of course, all six of these factors are not necessarily relevant in all types of situations; neither do they exhaust the factors that a jury may consider.
 
 
 90
 Turning to the matter before us, we are satisfied that the Pennsylvania Supreme Court would look to these same factors to determine substantiality of assistance where the civil liability of an accomplice is at issue. If the "aid" given, in terms of 18 Pa.Cons.Stat.Ann. Sec. 306, is deemed "substantial" after consideration of the Restatement Sec. 876(b) factors, then the fact-finder may find that the individual assisting the minor is civilly liable as an accomplice, providing of course that the intent required by Sec. 306 is also present.
 
 
 91
 In light of this analysis, we conclude that it is not helpful to have liability turn merely on the labels given to particular actors. Characterizations of a defendant in terms of a furnisher, server, purchaser, deliverer, seller, or transporter of liquor, do little to assist the fact-finder in determining liability. Similarly, merely referring to a defendant as an owner or tenant of the premises where alcohol was consumed by a minor, gives little guidance to the informed judgment of the fact-finder.
 
 
 92
 Each defendant's liability or freedom from liability must depend not on the particular label attached to him, but rather on the complex of factors which determine whether the particular defendant, in aiding, agreeing or attempting to aid a minor in consuming liquor, did so in substantial fashion.
 
 
 93
 The analysis which we have formulated may or may not, depending upon the circumstances of the particular case, lend itself to summary judgment or other similar proceedings.[18] In those instances where it does not, it will be for the fact-finder, pursuant to the legal principles announced in this opinion, to make the necessary determinations regarding intent and the substantiality of any assistance given.
 
 
 94
 In the present case, the record to date discloses that Christopher Poch was the president of the fraternity that sponsored the party. He helped organize the party, and he supplied some of the intoxicants consumed. Daniel Hoffend was the treasurer of the fraternity and an organizer of the party; he signed a blank check he knew would be used for the purpose of purchasing intoxicants for the party. Bruce Turgiss, Kevin Zacchea and Michael Bacha all knowingly allowed their apartment to be used for the purpose of serving intoxicants to minors.
 
 
 95
 Thus, in accordance with appropriate procedure and utilizing the legal principles which we have discussed in this opinion, the question to be answered in the district court is whether these first party defendants intentionally rendered substantial assistance to minor Corbin Evans in his consumption of intoxicants.[19]IV.
 
 
 96
 Finally, we must consider the separate appeals taken by Bruce Turgiss. Turgiss argues that the court below improperly augmented the record on appeal, and therefore the depositional testimony of Christopher Wackerman is not properly before this court. We agree.
 
 
 97
 Fed.R.App.P. 10(e) establishes a dichotomy between issues which are to be settled by the district court and issues which are to be settled by the court of appeals. Rule 10(e) authorizes the district court to augment the record in two situations: (1) when the parties dispute whether the record truly discloses what occurred in the district court, or (2) when a material matter is omitted by error or accident. All other questions on the form and content of the record are to be presented to the court of appeals.
 
 
 98
 It is well-settled that the purpose of Rule 10(e) is not to allow a district court "to add to the record on appeal matters that did not occur there in the course of proceedings leading to the judgment under review." 9 J. MOORE, MOORE'S FEDERAL PRACTICE p 210.08(1) at 10-55 (2d ed. 1985). United States ex rel. Mulvaney v. Rush, 487 F.2d 684, 687 (3d Cir.1973); S & E Shipping Corp. v. Chesapeake & Ohio Railway Co., 678 F.2d 636, 641-42 (6th Cir.1982); Munich v. United States, 330 F.2d 774, 776 (9th Cir.1964).
 
 
 99
 The district court below was not authorized to augment the record on appeal with deposition transcripts that were not on the record before it at the time its final decision was rendered. Similarly, this court could not, on its own motion, accept these records into evidence. The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.[20] Jaconski v. Avisun 359 F.2d 931, 936 n. 11 (3d Cir.1966).
 
 
 100
 The Wackerman deposition, purportedly containing allegations that Bruce Turgiss was a bartender on the night of the party, was not before the district court when it ruled in favor of Turgiss. Therefore, we have not considered these allegations on appeal. We conclude that the district court erred in augmenting the record on appeal.[21]
 
 V.
 
 101
 We agree with the defendants' contention that the Pennsylvania Supreme Court moved cautiously when it expanded social host liability in the Congini decision; the Pennsylvania Supreme Court did not intend to unduly expand the doctrine of social host liability. But we are satisfied that the fact situation presented here is fairly encompassed within the Congini rationale. In short, we predict that the Pennsylvania Supreme Court would impose civil liability on individuals who violate the State's criminal laws by intentionally and substantially aiding minors who consume intoxicants.
 
 
 102
 As to appeals at 85-1652 and 85-1653, we will reverse the district court's orders entered September 18, 1985 and remand these cases to the district court for further proceedings consistent with this opinion.
 
 
 103
 As to Turgiss' appeals at 86-1102 and 86-1103, we will direct that the district court vacate its order entered January 14, 1986, which augmented the record on appeal.
 
 
 104
 Each party will bear its own costs on appeal.
 
 
 105
 ADAMS, Circuit Judge, dissenting.
 
 
 106
 I part ways with the majority over what may appear to be a small point, but one which I believe has large implications. In my view, there is no final order in this case, as required by 28 U.S.C. Sec. 1291, and thus we lack appellate jurisdiction.
 
 I.
 
 107
 The rule that appeals lie only from final judgments is not only "[t]he historic rule in the federal courts," Advisory Committee Note of 1946 to amended Rule 54(b), Fed.R.Civ.P., but represents a considered policy judgment on the part of Congress that has been emphasized repeatedly by the federal judiciary. See, e.g., Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 634, 89 L.Ed. 911 (1945) ("The foundation of the policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation."). As Justice Frankfurter observed, the final judgment rule
 
 
 108
 was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all.... Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment....
 
 
 109
 Cobbledick v. United States, 309 U.S. 323, 324-25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). Thus, this Court itself has stated:
 
 
 110
 The substance of the dispute here is highly significant, and immediate resolution would clarify an important aspect of ... law as well as possibly terminating a lengthy controversy. However, the wisdom of the final judgment rule lies in its insistence that we focus on systemic, as well as particularistic impacts. The appellate system has become increasingly overburdened and the future would appear to promise no relief from the continuous increase in case loads. Accordingly, it would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation.
 
 
 111
 Bachowski v. Usery, 545 F.2d 363, 373-74 (3d Cir.1976). This very language and reasoning were adopted in Hoots v. Commonwealth of Pennsylvania, 587 F.2d 1340, 1347 n. 40 (3d Cir.1978).
 
 II.
 
 112
 "In a multiparty lawsuit such as this one, an order is final only if it meets one or the other of two conditions: (1) it must adjudicate the claims or the rights and liabilities of all the parties, or (2) [the district court] must expressly determine that there is no just reason for delay and expressly direct the entry of judgment. Rule 54(b), F.R.Civ.P." Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1231 (5th Cir.1973). The only alternative route by which review may be sought of a non-final order is to obtain certification of the question to this Court by the district court. 28 U.S.C. Sec. 1292(b).[1] But such certification was expressly sought in this case, and was specifically denied by the district court.
 
 
 113
 I agree with the majority that "it would be anomalous to hold that a plaintiff had no right to appeal the dismissal of all but one of his claims after that one claim not initially dismissed, had thereafter been voluntarily and finally abandoned." Ante, at 1155. I also agree with the majority that "[u]nder Fed.R.App.P. 4(a)(2) and the Cape May Greene reasoning, the 'premature' notices of appeal filed on October 15, 1985 would have become effective upon the final abandonment of the claims against Troy, and appellate jurisdiction would then have vested." The problem here, however, is that the remaining claim--that against Christopher Troy--has not been "finally abandoned."
 
 
 114
 The majority maintains that the order of voluntary dismissal without prejudice represents a final order because it has been more than two years since the accident occurred, and because the plaintiffs themselves claimed at oral argument that they have abandoned their right to press further their claim against Troy. But these arguments are not sustainable on the facts before us.
 
 
 115
 Although the two years normally allotted for the bringing of actions under Pennsylvania's statute of limitations had already passed as of the time of Troy's dismissal without prejudice, the statute of limitations issue is neither properly before us, nor dispositive of this case. The statute of limitations was not pleaded, and was not raised in the district court, or in the briefs filed in this Court. A statute of limitations time bar is not jurisdictional; rather, it constitutes an affirmative defense that is waived if the defendant fails to raise it in the answer. Fed.R.Civ.P. 8(c), 12(c). This Court therefore may not address the issue sua sponte. The fact that the statute of limitations could not have been raised at any time in the history of this case to date, as the majority notes, is exactly the point. We cannot predict whether Troy will assert the time bar until he has an opportunity to do so. Until that occurs--when the plaintiffs attempt to reinstitute the action against Troy, as permitted under the district court's order--it is merely speculative whether the plaintiffs will be unable to proceed. The majority's approach is simply not an instance of an appellate court assuming its duty to decline jurisdiction where some fact exists barring such jurisdiction; rather, the majority here attempts to assert jurisdiction where there is some possibility that a future event might eliminate the jurisdictional bar.
 
 
 116
 Moreover, on the record before us, there is nothing to indicate that the action against Troy may not be reinstituted by Fassett following an unfavorable decision on this appeal. Carr v. Grace, 516 F.2d 502 (5th Cir.1975), which the majority cites for the proposition that "the running of the statute of limitations ma[kes] a 'without prejudice' dismissal final for purposes of 28 U.S.C. Sec. 1291," ante at 1155, confined this ruling to "the peculiar circumstances of that case," and noted that "[t]he appealability of an order depends on its effect rather than its language." Carr, 516 F.2d at 503 n. 1. Neither the effect nor the apparent intention of the parties here was that the dismissal without prejudice would serve to foreclose further proceedings against Troy. Indeed, the colloquy on this point at oral argument suggests that, in fact, the intention of the parties was to obtain a de facto interlocutory ruling at this time and to preserve the plaintiffs' option to proceed against Troy thereafter (whether or not it would later appear to be remunerative to do so).
 
 
 117
 Except in the most unusual circumstances, factual representations advanced for the first time at oral argument, especially when unsupported by any affidavits, should not be addressed by this Court, as they do not constitute any part of the Record before us. As the majority does not refer in full to the oral argument, however, it is necessary to note in turn the remainder of counsels' assertions at oral argument in order to present a complete picture. At oral argument counsel admitted that Troy, Fassett, and Buckley had all agreed that a de facto interlocutory appeal would be arranged, whereby the plaintiffs would voluntarily dismiss the claim against Troy, Troy would agree that the dismissal be "without prejudice," and Troy would not assert the statute of limitations defense if Fassett and Buckley lost on appeal and then reinstituted the action against Troy. Given this admission by counsel, it is somewhat disingenuous to "assume that Troy would fail to plead a statute of limitations defense only if he were unaware of its availability," and to suggest that the possibility that Fassett and Buckley might reinstate their action and that Troy might not plead the statute of limitations is "mere[ly] theoretical" or "unrealistic." Ante at 1156.
 
 
 118
 In short, the parties worked out the sort of "end-run" around the finality rule that the courts have always disallowed and that the majority's approach today passively endorses. Allowing a party, by taking a voluntary dismissal without prejudice, to obtain a de facto interlocutory appeal--especially where certification under Sec. 1292(b) has been denied--would undercut the statutes governing appealable orders and the underlying philosophy disfavoring piecemeal litigation. As the Ninth Circuit declared in Fletcher v. Gagosian, 604 F.2d 637, 639 (9th Cir.1979), "if we accept appellants' rationale, then we also accept the notion that the policies against multiplicity of litigation and against piecemeal appeals may be avoided at the whim of a plaintiff. He need merely dismiss portions of his complaint without prejudice, appeal from what had been an interlocutory order, and refile the dismissed portion as a separate lawsuit."
 
 
 119
 I believe, as does the majority, that we must "giv[e] a practical rather than a technical construction to the finality rule," ante at 1156 (quoting Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980). Unlike Anderson, however, in which finality was achieved after the filing of the appeal, we cannot say here that "nothing else remains in the federal courts." Id. The claim against Troy may still be reinstated at any time, and the representations of counsel appear to make plain that the parties have reserved that possibility.[2] The dismissal remains without prejudice, and until the defendant raises the limitations bar, the plaintiffs retain their cause of action under the dismissal order.
 
 
 120
 The parties themselves may pursue either of two solutions to the appealability problem. They may return to the district court and seek a dismissal with prejudice of the claim against Troy, ending the possibility and suspicion that they have entered into a mutually agreed upon subterfuge to obtain interlocutory review while keeping alive the possibility of an action against Troy. Or they may proceed against Troy--a trial that would likely be quite brief--and then, if appropriate, seek proper review of the final judgment. One or the other of these decisions might affect the possible state proceedings against Troy, but that is a result of the two-track strategy the plaintiffs have elected to pursue. In any case, if the majority believes that counsel meant what they said (at least as their assertions at oral argument have been reconstructed), then it is difficult to see how any of these possible outcomes prejudices the plaintiffs in the least, since "as a pragmatic matter" the plaintiffs would not proceed against Troy given that litigation costs would outweigh the limited insurance yield that Troy represents. See ante at 1156-1157.
 
 
 121
 Whether we look exclusively to the Record--from which we see only that the cause was dismissed without prejudice--or to the representations of counsel at oral argument--from which we learn that the dismissal without prejudice was part of an arrangement that included Troy's promise not to raise the statute of limitations--it is clear that this is not a case of relying on a narrow technicality versus upholding the spirit of the law. Rather this is a case of upholding the spirit of the law versus an attempt to undercut the rule of law by artifice. See, e.g., Sullivan v. Pacific Indemnity Co., 566 F.2d 444, 445 (3d Cir.1977) (noting "our disapproval of indirect attempts to accomplish what cannot be done directly"). I sympathize with the concern that cases not be shuttled needlessly back and forth between the district courts and the courts of appeals, but the problem here has been created by the parties themselves.
 
 
 122
 The result reached by the majority today creates a loophole in our jurisdictional limitations, opening the door for future erosion of the principle behind the final judgment rule. Such erosion can only cause greater injustice, inefficiency, and delay in the future: "To review the district court's [decision] under the facts of this case is ... to undermine the ability of trial judges to achieve the orderly and expeditious disposition of cases." Marshall v. Sielaff, 492 F.2d 917, 919 (3d Cir.1974).[3]
 
 III.
 
 123
 I would conclude that this Court lacks jurisdiction to consider the case at this time, and that the only appropriate course is to dismiss the appeal. Accordingly, I respectfully dissent.
 
 
 
 [1]
 Delta Kappa Epsilon of New York and the Villanova Chapter of Delta Kappa Epsilon were additional first party defendants in the original suits. However, only the above-mentioned first party defendants remained in the suit at any time relevant to this appeal
 
 
 [2]
 Deposition testimony that was not before the district court would have established that Turgiss also worked as a bartender. See discussion infra, Part IV
 
 
 [3]
 There were offers of proof submitted against the third party defendants as well. It was alleged that Evans attended the fraternity sponsored party and that, after becoming intoxicated, he drove the car in which Buckley and Fassett rode when they were injured
 Although D'Allessandro did not attend the fraternity party, it was alleged that he was the driver of the pickup truck that Evans collided with. He was charged with general negligence. As to the remaining members of the Villanova Chapter of Delta Kappa Epsilon, it was variously alleged against them that they either supplied alcohol for the party, planned the party, or merely attended the party.
 We note that the district court opinion recites that, in an action brought against Evans and D'Alessandro in the Philadelphia Court of Common Pleas, D'Alessandro had been voluntarily dismissed, and a verdict against Evans was entered in the amount of approximately $5,100,000. Fassett v. Poch, 625 F.Supp. 324, 327 (E.D.Pa.1985).
 
 
 [4]
 In the Buckley action, summary judgment was entered in favor of:
 (i) named defendants Poch, Zacchea, Turgiss and Hoffend; and
 (ii) third party defendant Bacha and thirty-four additional Villanova Delta Kappa Epsilon members.
 Summary judgment was denied as to:
 (i) named defendant Troy; and
 (ii) third party defendants Corbin Evans and Peter Wynne.
 This left Troy as an original defendant and Evans, D'Alessandro, and Wynne as the only remaining third party defendants in the Buckley suit.
 In the Fassett action, summary judgment was entered in favor of:
 (i) named defendants Poch, Zacchea and Bacha; and
 (ii) third party defendant Hoffend.
 Dismissal of the complaint was granted in favor of:
 (i) Turgiss.
 Summary judgment was denied as to:
 (i) named defendant Troy; and
 (ii) third party defendant Evans.
 Additionally, all of the third party claims raised by Bacha were dismissed as moot. This left Troy as an original defendant and Evans and D'Alessandro as third party defendants in the Fassett suit.
 
 
 [5]
 Because of the disposition which we reach in this case, on remand it will be for the district court in the first instance to determine the respective rights of the parties
 
 
 [6]
 In reaching this conclusion, we find Sullivan v. Pacific Indemnity Co., 566 F.2d 444 (3d Cir.1977), to be inapposite. In Sullivan, the district court had denied a motion for class certification. In an attempt to appeal that order, the plaintiffs refused to further prosecute their case. After the district court granted a Fed.R.Civ.P. 41(b) dismissal, the plaintiffs appealed the denial of class certification. This court held that despite the subsequent dismissal, there was no final appealable order
 The reasoning in Sullivan, however, is heavily dependent upon this court's clearly articulated policy against allowing interlocutory appeals of class certification decisions, see, e.g. Gardner v. Westinghouse Broadcasting Co., 559 F.2d 209 (3d Cir.1977), aff'd, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978); Kramer v. Scientific Control Corp., 534 F.2d 1085 (3d Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976); Hackett v. General Host Corp., 455 F.2d 618 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972), and we decline to extend its holding beyond the class certification context.
 
 
 [7]
 We do not understand the dissent's argument, that because the statute of limitations was not pleaded or raised in the district court, the issue is not properly before us. The issue could not have been pleaded or raised in the district court because the bar of the statute of limitations did not attach until after the complaint was dismissed as to Troy. Additionally, the issue was not briefed before us because the question of appellate jurisdiction was raised by the court sua sponte
 
 
 [8]
 Fed.R.App.P. 4(a)(4) lists those situations in which a premature notice of appeal "self destructs." In Cape May Greene, Inc. v. Warren, 698 F.2d 179, 185 (3d Cir.1983), this court held that it would limit the self destruction of premature notices of appeal to those situations specified in Rule 4(a)(4)
 
 
 [9]
 The legal drinking age in Pennsylvania is now, and was at the time of Congini, twenty-one. 46 Pa.Stat.Ann. Sec. 601(65), 47 Pa.Stat.Ann. Sec. 4-493(1) & (14)
 
 
 [10]
 Although the specific fact situation faced in Congini involved a minor seeking recovery for the results of his own intoxication, the defendants here do not contend that the Congini rationale is inapposite for a case involving a third party plaintiff. Congini treats third party recovery as an a fortiori case, 470 A.2d at 518 ("we see no valid distinction which would warrant a limitation on the action to third parties alone"), and this "extension" of Congini has been recognized and applied without comment in the decisions of the Pennsylvania appellate courts. See, e.g. Douglas v. Schwenk, 330 Pa.Super. 392, 479 A.2d 608 (1984)
 
 
 [11]
 The only Pennsylvania case brought to our attention that limits Congini to adult servers, is Lattanzi v. Tori, No. 00737 (Pa.Super. Feb. 21, 1985) [491 A.2d 925 (table) ]. Lattanzi is an unpublished per curiam memorandum decision. We note that under the internal operating procedures of the Pennsylvania Superior Court, a per curiam order supported by a memorandum opinion "shall not be published and may not be cited as precedent in any brief, argument or subsequent opinion." 210 Pa.Code Sec. 65.38(a). Appellants argue that although we cannot cite Lattanzi as precedent, we should look to its reasoning as we interpret Congini. Whatever merit there might be to such an argument, we are forced to agree with the district court's conclusion that Lattanzi's restrictive reading of Congini is "wholly unwarranted," 625 F.Supp. at 332, and we are not bound by it. Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); National Surety Corp. v. Midland Bank, 551 F.2d 21, 29-30 (3d Cir.1977)
 
 
 [12]
 RESTATEMENT (SECOND) OF TORTS Sec. 286 provides:
 When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted.
 The Court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
 (a) to protect a class of person which includes the one whose interest is invaded, and
 (b) to protect the particular interest which is invaded, and
 (c) to protect that interest against the kind of harm which has resulted, and
 (d) to protect that interest against the particular hazard from which the harm results.
 
 
 [13]
 This reasoning did not conflict with the holding of either Manning or Klein. In Manning, the court refused to find civil liability on the basis of a violation by a non-licensee of the State Liquor Code, 47 Pa.Stat.Ann. 4-493(1), which regulates the serving of alcohol to visibly intoxicated persons. Manning did not adopt a standard of negligence per se in that case because the range of interests to be protected under the Liquor Code are not as broad as the range of interests to be protected under the Crimes Code. Although the Crimes Code is applicable to all citizens, the Liquor Code is primarily concerned with the actions of licensees. Congini, 470 A.2d at 518 n. 3; Manning, 310 A.2d at 77 (Pomeroy, J., concurring)
 Likewise, no liability could be found in Klein because no criminal statute exists that regulates the serving of intoxicants to adults.
 
 
 [14]
 The full text of 18 Pa.Cons.Ann. Sec. 6308 reads: "A person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes, possesses or transports any alcohol, liquor or malt or brewed beverages."
 
 
 [15]
 RESTATEMENT (SECOND) TORTS Sec. 876 provides:
 Persons Acting in Concert
 For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
 (a) does a tortious act in concert with the other or pursuant to a common design with him, or
 (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
 (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
 
 
 [16]
 The Restatement does not specifically distinguish between accomplices and conspirators. For a discussion of the distinction between civil conspirators and civil accomplices, see Halberstam v. Welch, 705 F.2d 472 (D.C.Cir.1983). Since Congini spoke in terms of accomplice liability, our holding rests on that ground alone, and we decline to reach the issue of whether Pennsylvania would also recognize civil conspiracy liability, or whether the two standards indeed differ. See Commonwealth v. Petrie, 277 Pa.Super. 239, 419 A.2d 750 (1980)
 
 
 [17]
 The second paragraph of comment d to RESTATEMENT (SECOND) TORTS Sec. 876(b) reads in full:
 The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts by the other, ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him. In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence (see Sec. 442) or recklessness. (See Sec. 501). [References to illustrations omitted.]
 
 
 [18]
 We also do not foreclose the possibility that summary judgment may be appropriate for reasons not addressed in this opinion (e.g. statute of limitations, res judicata, etc.)
 
 
 [19]
 Fassett and Buckley also urged reversal on the ground that the district court's request for "offers of proof" to be used as a basis for his rulings on the summary judgment motions, was improper under Fed.R.Civ.P. 56. While we note that the recent cases of Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and Anderson v. Liberty Lobby, Inc., --- U.S. ----, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), lend some support to the actions of the district court in this regard, our holding that the Pennsylvania social host liability law would extend liability beyond "furnishers" of alcohol, makes it unnecessary to reach this issue inasmuch as a remand to the district court will now be required. We assume that any subsequent summary judgment proceedings that may be brought, will be conducted in accordance with the requirements of Fed.R.Civ.P. 56
 
 
 [20]
 It would, of course, be proper for an appellant to assert that a district court judge improperly refused to consider deposition testimony or accept it into evidence. Such a charge could be evaluated properly by this court on the basis of the record that was before the district court at the time the decision was made. Such a claim is not raised in the instant case
 
 
 [21]
 Our reversal of the ruling dismissing the complaint in favor of Bruce Turgiss and the judgments in favor of the other first party defendants leaves the district court, on remand, free to consider the excluded Wackerman deposition and any other relevant evidence which is proffered by the parties
 
 
 [1]
 The doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), allows appellate review of collateral orders. For an otherwise unappealable order to be deemed "final" under the collateral order doctrine of Cohen, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Yakowicz v. Commonwealth of Pennsylvania, 683 F.2d 778, 783 (3d Cir.1982). The Cohen doctrine thus clearly does not apply to this case. The issue on appeal is not collateral, nor is it one that would evade subsequent review
 
 
 [2]
 Even if it were true that plaintiffs have "declared [their] intention to take no further action," ante at 1157, this has little to do with the facts and holding in Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir.1976), on which the majority relies. In Borelli, the district court dismissed the complaint without prejudice because the plaintiff had failed to establish standing. Although this Court noted in dictum that "if the plaintiff cannot amend or declares his intention to stand on his complaint," then the order "becomes final and appealable," we dismissed the appeal for want of jurisdiction, because "[w]e need[ed to] go no further than to note that we [were] not confronted with a situation where it [was ] not possible," id. at 952 (emphasis added), for the plaintiff "to take further action."
 
 
 [3]
 This case itself serves as an illustration of that point. The district court's non-final order was entered on September 18, 1985. Thus, more than a full year has been lost from the plaintiffs' taking of this interlocutory appeal. Had the parties proceeded to a final disposition, and then appealed the issues in question, those issues would have been resolved long ago