37 F.3d 1498
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Thomas Ben CANADAY, Individually and on behalf of those
similarly situated, Petitioner-Appellant,
v.
Frank J. KELLEY, Attorney General, Individually and in his
capacity as Attorney General of the State of
Michigan, et al., Defendants-Appellees.
 No. 93-1860.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1994.
 
 Before: CONTIE, MILBURN, and DAUGHTREY, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff Thomas Ben Canaday appeals the district court's dismissal of his 42 U.S.C. Sec. 1983 action based upon its grant of defendants' motion to dismiss in part and its grant of defendants' motion for summary judgment in part in this action alleging that plaintiff's veterans' preference rights were violated. On appeal, plaintiff states the issues as (1) whether the district court erred in granting defendants' motion for summary judgment without allowing adequate time and assistance for discovery, despite plaintiff's claims that evidence in defendants' possession would allow him to withstand the motion; (2) whether, pursuant to 28 U.S.C. Sec. 1331, federal court jurisdiction exists for plaintiff's claim that continuing unequal enforcement of state statutes and regulations affecting veterans violates federal constitutional and statutory provisions; and (3) whether the lower court abused its discretion by denying plaintiff's motion for permission to supplement the record on appeal and by refusing to give plaintiff additional time to supply requested exhibits and materials. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiff is a veteran of the Korean War. He was honorably discharged from military service in 1959. In 1975, he was licensed to practice law in the state of Michigan, and in 1977, plaintiff applied for employment with the state. Plaintiff inquired about veterans' preference points during the initial application process. At that time, he was informed that under Michigan civil service rules, he did not qualify for such points because he had been discharged from military duty more than three years before the date of his application for employment. Prior to this exchange, the Michigan attorney general had issued a formal opinion finding the three-year rule a valid limitation under the authority granted to the Michigan Civil Service Commission.
 
 
 3
 Plaintiff was hired to work as a Compensation Hearing Officer with the Michigan Employment Security Commission on a temporary basis in August 1977; his assignment ended in July 1978. In 1979, the Michigan Attorney General issued a formal opinion finding that the Michigan constitutional provision, Mich. Const. art. 11, Sec. 5, empowering the Civil Service Commission to make rules and regulations governing personnel matters for persons in the classified civil service, superseded the Michigan Preference in Employment Act, 1897 Mich.Pub.Acts 205, Mich.Comp.Laws Sec. 35.401, which grants veterans certain employment preferences. Plaintiff was recalled in 1981, after a layoff of three years, and was assigned to a permanent position as an Administrative Law Examiner III with the Michigan Employment Security Board of Review in the state Department of Labor.
 
 
 4
 The Michigan Civil Service Commission adopted Rule 19 in January 1983. The new rule calculated seniority on the basis of continuous state service, regardless of the positions held. The previous rule had defined length of service as the amount of time employed within a given classification level or higher. The new rule also eliminated temporary appointment service rendered after January 1977 as the basis for credit toward seniority. After this rule change, plaintiff was laid off from his Administrative Law Examiner ("ALE") III position. The state informed plaintiff that the layoff was necessitated by a reduction in federal funding. Plaintiff filed a grievance with the Civil Service Commission as a result of the layoff; he also pursued an age discrimination claim with the federal Equal Employment Opportunity Commission (EEOC). The civil service grievance was denied after a hearing on August 23, 1983, because the examiner found that the layoff was not improper and that veterans' preference points were correctly awarded only upon initial state employment, not in subsequent personnel decisions. Plaintiff did not appeal the examiner's decision and dropped his federal claim.
 
 
 5
 In 1983, plaintiff was awarded a position as a referee in the Workers' Compensation Bureau, classified as ALE III. In 1986, the position was reclassified as ALE V. A year later, however, the Michigan legislature amended the state workers' compensation act to eliminate the referee position. The Civil Service Commission challenged the act as unconstitutional. Plaintiff, as well as other affected referees, also challenged the legislation, raising due process and equal protection claims. The actions were decided against both the commission and the individual litigants.
 
 
 6
 After the elimination of the ALE V position, plaintiff was assigned to a position as a Mediator VIB in the Department of Labor. Plaintiff characterized the assignment as a demotion from the ALE V position he had previously held and complained that the commission had failed to comply with the state supreme court's mandate that he be appointed to an ALE V position.
 
 
 7
 An ALE V position became available in the Michigan Department of Public Health in 1989. Although plaintiff applied for the job, it was awarded to a nonveteran applicant. Plaintiff filed a grievance with the Civil Service Commission claiming that veterans' preference protection should have been granted to him when he applied for the position. The commission denied his grievance. Plaintiff did not pursue his right of appeal to a state circuit court but filed an action in federal district court. Plaintiff remains a classified civil service employee in the Michigan Department of Labor.
 
 B.
 
 8
 Plaintiff filed this action on August 13, 1991, two months after the Michigan Civil Service Commission announced its final decision to deny plaintiff relief for his grievance regarding the selection of a nonveteran state employee for a position plaintiff sought in the Michigan Department of Public Health. In his complaint, plaintiff claimed that the various layoffs to which he has been subject, the state's failure to award him the ALE V position in 1989, and the opinions of the Michigan attorney general indicate anti-veteran attitudes among public officials and constitute an ongoing pattern of discrimination against him, as well as other war veterans similarly situated who entered the civil service after advanced education or professional training and without any state employment prior to military service. He argues that veterans so situated should not be treated differently from those who leave state employment to join the military and subsequently return.
 
 
 9
 The district court found that plaintiff's claims derived from three discrete events: (1) his layoff on February 11, 1983, from the Michigan Department of Labor, which came after adoption of the civil service rule changing the calculation of seniority and resulting in a reduction in plaintiff's seniority status, (2) his removal on March 30, 1987, from an ALE V position in the Department of Labor and his subsequent assignment to a position classified as Mediator VIB after his prior position was legislatively abolished, and (3) the hiring in 1989 of another state employee for an ALE V position plaintiff sought in the Department of Public Health. Plaintiff also challenges state attorney general opinions limiting the allowance of veterans' preference credit points to three years from discharge, OAG 1975, No. 4846, p. 1 (January 9, 1975), and finding the Michigan Preference in Employment Act regulating employment of veterans in the public sector superseded by the Michigan constitution's delegation of authority to the state civil service commission to make rules and regulations governing state employees in the classified civil service, OAG 1979, No. 5840, p. 110 (March 27, 1979). Plaintiff argues that these opinions are indicative of a general pattern of discrimination against veterans' preference for persons with no state employment prior to military discharge.
 
 
 10
 In plaintiff's complaint, federal jurisdiction was premised on 42 U.S.C. Sec. 1983. Plaintiff alleged that defendants, both as individuals and in their official capacities, were liable to plaintiff as a result of their enforcement of the civil service employment preference rule being challenged. Plaintiff argues that enforcement of the rule has resulted in the denial of his constitutional and statutory rights, including: (1) his right, as a veteran, to equal protection and procedural due process, U.S. Const. amend. XIV, Sec. 1, (2) his reemployment rights under 38 U.S.C. Secs. 4301 and 4302, (3) his right to be free of age discrimination in violation of 29 U.S.C. Sec. 621 et seq., (4) his right to unfettered freedom of interstate travel, U.S. Const. art. IV, Sec. 2, and (5) the guarantee in the Fourteenth Amendment that federal obligations will not be questioned, U.S. Const. amend XIV, Sec. 4. Plaintiff also asked the district court to exercise pendent jurisdiction to consider his state claim that Michigan's denial of veterans' preference protection to himself and to others similarly situated violated his rights under Mich.Comp.Laws Sec. 35.401 et seq.
 
 
 11
 Defendants first responded to a request for production of documents from plaintiff on January 14, 1992, and then filed a motion to dismiss or for summary judgment on March 2, 1992. Plaintiff filed a motion seeking class certification on the same day. On March 6, 1992, the parties held a scheduling conference at which they reported to the magistrate that they were unable to agree to a joint pre-trial order. At that conference, the magistrate denied plaintiff's request for court supervision of discovery but granted a request for extension of the discovery period. Plaintiff filed a motion to compel production of documents on May 5, 1992. In response, defendants filed a motion requesting a protective order, claiming that plaintiff's requests were overbroad and sought irrelevant state documents from a period spanning 50 years.
 
 
 12
 Arguments on plaintiff's motion for class certification and defendants' motion to dismiss or for summary judgment were scheduled on May 21, 1992. The district court heard arguments only on the defense motion, indicating that it would entertain arguments on plaintiff's motion for class certification only if the motion to dismiss or for summary judgment was not granted. At the hearing, the district court reviewed with plaintiff, in painstaking detail, each of his claims. Plaintiff made no mention of his claim that defendants' actions violated Sec. 4 of the Fourteenth Amendment and made only a passing reference to his claim that the state's action violated his constitutional right to interstate travel by indicating that he had moved from Colorado to Michigan before applying for employment with the state government.
 
 
 13
 During the hearing to consider defendants' motion, the district court required plaintiff to show evidence to "establish the liability" of the defendants in their individual capacities, although plaintiff argued in his pleadings that he would suffer prejudice if the court did not allow discovery of the documents he alleged were in the sole possession of defendants. The district court judge indicated to plaintiff that defendants' motion for a protective order was not before the court at the time of the hearing. However, five days later, on May 26, 1992, the court granted the motion, noting in the order that the result was "so plainly indicated" that it was issuing the order before the expiration of the time during which plaintiff would ordinarily reply.
 
 
 14
 The district court granted defendants' motion to dismiss or for summary judgment on May 19, 1993. In its opinion, the district court found plaintiff's claims relating to his 1983 layoff and the 1987 legislative elimination of his referee position barred by the three-year statute of limitations. The district court refused to apply equitable tolling to the statute and rejected plaintiff's assertion of a continuing wrong, distinguishing a continuing wrong from the continuing effects of a past wrong, the category to which plaintiff's claims belonged. The district court dismissed plaintiff's remaining equal protection claim, dealing with the 1989 denial of an ALE V position, finding that plaintiff had not been treated differently than others similarly situated, the predicate for an equal protection violation. Defendants were granted summary judgment as to plaintiff's due process claim relating to the same incident. The district court found that plaintiff may have had a protected property interest under Michigan law. However, after applying the factors articulated in Mathews v. Eldridge, the court concluded that plaintiff was given all the process he was due. Mathews, 424 U.S. 319, 335 (1976). The district court dismissed plaintiff's claims under the Veterans' Reemployment Rights Act because he found the statutes inapplicable to plaintiff's situation. Plaintiff's age discrimination claim was also dismissed, as a result of plaintiff's failure to pursue his claims in a timely manner. Because it found that plaintiff's federal claims were insubstantial, the district court refused to exercise pendent jurisdiction over the state claim alleging a violation of plaintiff's rights under Michigan's Veterans' Preference Act. Plaintiff's timely appeal followed. No other motions were heard by the district court until plaintiff filed a motion to expand the record on appeal. That motion was granted, in part, to allow correction of typographical errors in the hearing transcript and in the transcript of plaintiff's deposition. However, the district court denied plaintiff's other requests to supplement the record with documents and attachments that were "indisputably not a part of the record considered by [the district] court." J.A. 629.
 
 II.
 A.
 
 15
 Plaintiff argues that the district court improperly granted defendants' motion for summary judgment without first allowing sufficient time and assistance to enable plaintiff to conduct discovery, especially in light of what he calls a "reasonable inference" that evidence solely in the control and possession of defendants would have allowed plaintiff to withstand the motion.[1]
 
 
 16
 A district court's grant of summary judgment is reviewed de novo. Brooks v. American Broadcasting Co., 932 F.2d 495, 500 (6th Cir.1991), cert. denied, 114 S.Ct. 609 (1993). Complex cases are not necessarily inappropriate for summary judgment. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989). Under Fed.R.Civ.P. 56(c), summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) and LaPointe v. United Autoworkers, Local 600, 8 F.3d 376, 378 (6th Cir.1993). The movant must meet an initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the respondent must come forward with specific facts demonstrating a genuine issue for trial. Thus, summary judgment is a device that allows the court to "isolate and dispose of factually unsupported claims or defenses." Celotex, 477 U.S. at 323-24.
 
 
 17
 In considering a motion for summary judgment, the court must determine whether " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Kunz v. United Food & Commercial Workers, Local 876, 5 F.3d 1006, 1009 (6th Cir.1993) (quoting Massey v. Exxon Corp., 942 F.2d 340, 342 (6th Cir.1991). See also Stein v. National City Bank, 942 F.2d 1062, 1064 (6th Cir.1991) (finding that the proper inquiry in a motion for summary judgment is whether there are any factual issues that can be resolved only by a finder of fact because the evidence is susceptible to interpretation in favor of either party). The evidence, all facts and any inferences that may permissibly be drawn from the facts, must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, 369 U.S. 654, 655 (1962) (per curiam)). However, the respondent must produce more than a scintilla of evidence to support his claim of a disputed factual issue. "There must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 18
 The non-movant must present "significant probative evidence" in support of his pleading. Conclusory assertions are not sufficient to allow a non-movant to withstand a motion for summary judgment. Moore v. Philip Morris Cos., 8 F.3d 335, 343 (6th Cir.1993). Moreover, this is true "even where the evidence is likely to be within the possession of the defendant...." Street, 886 F.2d at 1477. The trial court has discretion to determine whether the non-moving party is pursuing a claim that is "implausible." Matsushita, 475 U.S. at 587. If the evidence is "merely colorable, or is not significantly probative," summary judgment may be proper. Anderson, 477 U.S. at 249-50. If after conducting discovery, the non-moving party is unable to present plausible evidence that would lead a rational trier of fact to find in his favor, summary judgment may be granted. Street, 886 F.2d at 1478.
 
 
 19
 The first issue to be determined is whether the district court judge abused his discretion in granting summary judgment without allowing plaintiff additional time for discovery. See Rhodes v. McDannel, 945 F.2d 117, 119 (6th Cir.1991) (per curiam), cert. denied, 112 S.Ct. 872 (1992) and Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir.1988). The scope of discovery is in the discretion of the trial court, Emmons v. McLaughlin, 874 F.2d 351, 356 (6th Cir.1989), and a trial court is given tremendous discretion in balancing the needs of the respective parties. We recognize the need for a party to discover information "essential to [the] opposition," but as we have previously noted, the need to allow such discovery is "not without limits." Elvis Presley Enters., Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 893 (6th Cir.1991).
 
 
 20
 Before summary judgment may properly be ordered, the non-moving party must be allowed an opportunity for discovery, White's Landing Fisheries, Inc. v. Buchholzer, 1994 WL 321660 (6th Cir.1994), although the discovery obtainable under Fed.R.Civ.P. 56 governing summary judgment is less extensive in scope than that allowed under Fed.R.Civ.P. 26, which governs the conduct of discovery in general, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 298 (1968). See also Street, 886 F.2d at 1477 (stating that the non-moving party's burden to produce probative evidence applies when evidence is in the sole possession of the moving party, so long as the plaintiff has had a full opportunity to conduct discovery). In this case, plaintiff claims that the district court erred in granting summary judgment before he had the opportunity to acquire information he believed would demonstrate the propriety of class certification, substantiate the continuous pattern of discrimination against veterans alleged in his complaint, uncover the political motivations underlying the state legislature's abolition of his referee position in the Workers' Compensation Bureau, and prove his claim that the veterans' preference rights accorded him under Michigan law were violated. Yet, plaintiff failed to comply with Fed.R.Civ.P. 56(f), which gives a court the power to deny a motion for summary judgment, order a continuance, or permit discovery if an affidavit submitted by the non-moving party indicates that he cannot "for reasons stated present in the affidavit facts essential to justify the party's opposition...." In other words, plaintiff could have submitted an affidavit to the court to explain any lack of substance in his pleadings and justify his failure of proof. Plaintiff did attach an affidavit to his brief in opposition to the motion for dismissal or summary judgment, but he mentioned only his belief that further discovery would reveal a pattern of discriminatory treatment of veterans' preferences by defendants. The affidavit lacked the requisite particularity required by Fed.R.Civ.P. 56(f) and failed to explain plaintiff's failure to present evidence. Moreover, the district court was not obligated to treat plaintiff's motion to compel discovery and response to the motion for dismissal and summary judgment as responses satisfying Fed.R.Civ.P. 56(f). Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527 (11th Cir.1983).
 
 
 21
 In Emmons v. McLaughlin, the plaintiff asserted that the lower court abused its discretion by not permitting further discovery before granting summary judgment. The plaintiff in that case also neglected to furnish an affidavit under Fed.R.Civ.P. 56(f). The Emmons court found that a party opposing a summary judgment motion has no absolute right to additional time for discovery and noted that Fed.R.Civ.P. 56(f) furnished the litigant's mechanism for relief. Emmons, 874 F.2d at 356. We held that it was the plaintiff's burden "to demonstrate to the district court 'for the reasons stated' why he could not oppose the summary judgment motion by affidavit and how postponement of a ruling on the motion would enable him to rebut [movant's] showing of the absence of a genuine issue of fact." Id. In the absence of a Fed.R.Civ.P. 56(f) affidavit, the court found that the plaintiff had failed to meet his burden and that the court's grant of summary judgment was not an abuse of discretion. Emmons, 874 F.2d at 356-57. In this case, plaintiff's failure to supply the district court with specific facts regarding the discovery he believed necessary put him in much the same position as the plaintiff in Emmons. Although plaintiff attempts to set out in his appellate brief the evidence that could have been produced and his perceived difficulty in obtaining discovery from defendants, his effort comes too late. The district court had no specific information from plaintiff in response to defendants' motion that it could use as a basis for extending discovery. "[A] party cannot avoid summary judgment on the basis of nebulous assertions." Gordon v. Barnes Pumps, Inc., 999 F.2d 133, 138 (6th Cir.1993) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968)).
 
 
 22
 Moreover, there is no evidence that additional discovery would have produced disputed material facts to support plaintiff's claim. See, e.g., Chilingirian v. Boris, 882 F.2d 200, 203 (6th Cir.1989) (upholding summary judgment despite the complete absence of discovery). Plaintiff enjoyed almost seven months in which to conduct discovery, and he could not rely on the "forlorn hope that 'something would turn up' at trial." Street, 886 F.2d at 1483. We are mindful of our earlier admonition that summary judgment should not ordinarily be granted before the completion of discovery, especially in cases involving constitutional and civil rights claims. Smith v. Freland, 954 F.2d 343, 348 (6th Cir.) (citing Tarleton v. Meharry Medical College, 717 F.2d 1523, 1535 (6th Cir.1983), cert. denied, 112 S.Ct. 1954 (1992)). In this case, however, there was no reason, based on the evidence received and on the absence of an affidavit complying with Fed.R.Civ.P. 56(f), for the district court to delay entry of judgment. Shavrnoch v. Clark Oil and Refining Corp., 726 F.2d 291, 294 (6th Cir.1984).
 
 
 23
 Plaintiff contends that additional discovery would have enabled him to set forth more evidence in support of his motion for class certification and that the district court erred in granting summary judgment before considering his motion to proceed as a class action. It is reasonable for a district court to consider a motion for summary judgment before reaching a motion for class certification when resolution of the former is likely to prevent "needless and costly further litigation." Wright v. Schock, 742 F.2d 541, 544 (9th Cir.1984); Jibson v. Michigan Educ. Ass'n-NEA, 1994 WL 386820 (6th Cir.1994) (affirming district court's grant of summary judgment and finding no error in district court's refusal to rule on motion for class certification). In this case, the district court's disposition of plaintiff's claims left the court without substantial federal claims to consider. Therefore, no other issues remained to be settled in a federal court, and the issue of class certification was moot.
 
 
 24
 Plaintiff also urges this court to adopt the view that a genuine issue existed regarding whether he was denied due process after his position as a referee was abolished by act of the Michigan state legislature. He fails to detail, however, how additional discovery would have produced evidence to demonstrate such a genuine issue, especially in light of the extensive litigation conducted immediately following the legislature's action. His sole claim appears to be that defendants had knowledge of the political motivations underlying the act of the Michigan legislature. We can only assume he means to suggest that with more discovery, he could have produced evidence of this knowledge. There is no suggestion in plaintiff's argument to inform us as to how this would have produced a genuine issue as to material fact. The question plaintiff raises is a matter of law. Moreover, the district court judge ruled that plaintiff's claims as to this issue were barred by the statute of limitations. Although plaintiff disagrees with the district court's rejection of the continuing wrong doctrine and subsequent refusal to allow equitable tolling of the statute of limitations, he has produced no evidence of disputed fact. His argument concerns only whether the facts established are ripe for the application of the doctrine.
 
 
 25
 We conclude that the district court judge did not abuse his discretion by granting defendants' motion for summary judgment. The material facts were not in dispute, and any evidence plaintiff might have secured through additional discovery would not have established a genuine issue of material fact. Therefore, the district court properly awarded summary judgment under these circumstances.
 
 B.
 
 26
 Plaintiff next argues that unequal enforcement of veterans' preference protections, which impacted him most recently in 1989 when he was denied an ALE V position with the Michigan Department of Public Health, violates his federal constitutional and statutory rights and that proper consideration of these violations provides a substantial federal question sufficient for the court to invoke its jurisdiction under 28 U.S.C. Sec. 1331.
 
 
 27
 According to plaintiff, Michigan's unequal enforcement of its veterans' preference statutes frustrates the intention of Congress in enacting the Preferences in Employment Act of 1944, now codified in Title 5 of the United States Code. Preferences in Employment Act of 1944, 58 Stat. 387 (codified in scattered sections of 5 U.S.C.). The purpose of the legislation, he argues, is to compensate the men and women who serve in defense of the nation for the mental and physical hazards incident to military service. Moreover, plaintiff argues that Congress intended the federal purpose supporting the act to be applied to any government or agency that receives federal funds. According to plaintiff, Michigan's disparate treatment of publicly-employed veterans who were employed by the state before leaving to enter the military and those who seek public employment more than three years after their military discharge is pre-empted by federal law and specifically by the Preferences in Employment Act. 58 Stat. 387 (codified in scattered sections of 5 U.S.C.). However, defendants argue that plaintiff failed to raise this issue before the district court and that review by this court is therefore precluded. "As a general rule, this court will usually decline to entertain arguments not presented in the first instance to the trial court." Brown v. Crowe, 963 F.2d 895, 897 (6th Cir.1992). See, e.g., Walters v. First Tennessee Bank, N.A., 855 F.2d 267, 271 (6th Cir.1988), cert. denied, 489 U.S. 1067 (1989) (refusing to resolve on appeal a statute of limitations issue not raised at trial); Roth Steel Tube Co. v. C.I.R., 800 F.2d 625, 632 (6th Cir.1986), cert. denied, 481 U.S. 1014 (1987). In any event, the federal statutes applicable to federal employees have not been extended to state employees.
 
 
 28
 The record in this case establishes that plaintiff raised issues regarding violations of federal law in his original and amended complaints. The charges of such violations, however, are vague and unaccompanied by specific statutory references. Plaintiff's pleadings, though, are sprinkled with references to 38 U.S.C. Secs. 2021 and 2022, part of the federal Employees Reentering Employment Act. 38 U.S.C. Secs. 2021 and 2022, now codified as 38 U.S.C. Secs. 4301 and 4302 respectively. During the hearing on defendants' motion for dismissal and summary judgment, plaintiff referred to the same statutes, arguing that the Act was fully applicable to him. The district court examined plaintiff's claim under Secs. 4301 and 4302 and determined that plaintiff had failed to state a claim under those sections. In this appeal, plaintiff changes course and argues that the federal law embodied in the Preferences in Employment Act, codified in Title 5 of the United States Code, pre-empts the unequal enforcement of veterans' preferences permitted under Michigan law. We conclude that the nebulous references to pre-emption of state law found in plaintiff's complaints related to the federal statutes he specifically cited; namely, the federal reemployment rights legislation. Because plaintiff failed to raise the issue of pre-emption by the Preferences in Employment Act at the district court level, this court will not consider plaintiff's pre-emption claim.
 
 
 29
 Plaintiff argues that he presented sufficient grounds for federal jurisdiction by asserting that the veterans' preference scheme employed by the state of Michigan, and enforced by defendants, not merely violates but repudiates the obligations of the government in violation of the Fourteenth Amendment. Section four of that amendment provides in relevant part: "The validity of a public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned." U.S. Const. amend. XIV, Sec. 4. Plaintiff claims that the veterans' preference rights embodied in federal law demonstrate a general federal purpose to make such obligations binding on the states and that the system implemented by Michigan, which has denied him his preference rights and likewise has denied them to other veterans similarly situated, results in the repudiation of a federal obligation. However, plaintiff failed to assert this claim at the hearing conducted in the district court. Thus, we consider this claim waived, and we will not consider it. See Banks v. Rockwell Int'l North Am. Aircraft Operations, 855 F.2d 324, 326 (6th Cir.1988) (finding that "vague reference" in memorandum in opposition to summary judgment did not preserve an argument for appeal).
 
 
 30
 Plaintiff argues that the unequal enforcement inherent in Michigan's civil service rules and statutes violates his constitutional right to interstate travel. He claims that the Michigan preference system, in contradiction of the federal purpose to grant all veterans preferences in employment, violates the right to travel of veterans who come to Michigan more than three years after discharge from the military. Those veterans, he asserts, are treated differently from veterans who enter the military from public employment in Michigan. Plaintiff arguably waived this claim by failing to address it in the hearing on defendants' motion for dismissal and summary judgment. However, even if we credit plaintiff's reference to his move from Colorado to Michigan before applying for employment as sufficient to preserve this claim, we find no evidence to support plaintiff's contention. The Michigan statutes have no residency requirements. Distinctions are based not on the residency of a veteran but on his or her employment status prior to service. Michigan residents who were privately employed prior to service are treated the same as non-Michigan residents who were similarly employed.
 
 
 31
 "A state law implicates the right to travel when it actually deters such travel ... when impeding travel is its primary objective ... or when it uses " ' "any classification which serves to penalize exercise of that right." ' " Attorney General v. Soto-Lopez, 476 U.S. 898, 903 (1986) (citations omitted). In Soto-Lopez, New York imposed a prior-to-service residency requirement for any veterans' preference award. The Court found such a requirement unconstitutional because it violated certain veterans' rights to interstate travel and equal protection. In this case, however, no benefit is conditioned on residency; the statute does not penalize non-residents. Even plaintiff has admitted that his case does not involve instances of discrimination against non-residents. J.A. 553-55. Thus, plaintiff has failed to demonstrate the applicability of this constitutional right to his claim.
 
 
 32
 The courts have consistently held that the Preferences In Employment Act embodies Congressional desire to reward military service and personal sacrifice on behalf of the nation. Crowley, 527 F.2d at 1182. This desire alone, without a more specific showing of intent, does not establish that such preferences are a matter of constitutional right. The constitutional dimension of plaintiff's claim seems to rest only in the requirement that Michigan, when it chooses to confer a benefit on veterans employed by the state, offer such a benefit in a way that does not violate the rights protected by the Constitution of the United States. Soto-Lopez, 476 U.S. at 911-12. Plaintiff has not made this showing.
 
 
 33
 The constitutional and federal statutory violations claimed by plaintiff do not present substantial federal questions. Therefore, we find no error in the district court's refusal to exercise pendent jurisdiction over plaintiff's state law claim. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725-26.
 
 C.
 
 34
 Finally, plaintiff argues that the district court's denial of his motion to supplement the record was an abuse of the court's discretion and that the district court erred in refusing to allow him additional time to supply exhibits and materials. Plaintiff asserts that his status as a pro se litigant committed to represent the class of veterans similarly situated without fees or remuneration warranted special consideration. We find plaintiff's claim, that the district court erred in denying plaintiff's motion to supplement the record on appeal and in refusing to grant plaintiff additional time to supply exhibits and other materials, meritless.
 
 
 35
 We use an abuse of discretion standard to review a trial court's evidentiary rulings. Eyerman v. Mary Kay Cosmetics, Inc., 967 F.2d 213, 216 (6th Cir.1992). See also Samuels v. Wilder, 871 F.2d 1346, 1354 (7th Cir.1989) (employing abuse of discretion standard on appeal of refusal to supplement record). An abuse of discretion is apparent when the appellate court is "firmly convinced" that the lower court has erred. Southward v. South Central Ready Mix Supply Corp., 7 F.3d 487, 492 (6th Cir.1993). " 'A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.' " Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 479 (6th Cir.1987) (quoting Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 469 U.S. 1200 (1985) (citations omitted)). See also Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 30 (6th Cir.1988) (relying on same standard).
 
 
 36
 In his motion to supplement the record on appeal, plaintiff asked the court to permit typographical corrections to the hearing transcript and to permit similar corrections to his deposition testimony. He also sought permission to attach several exhibits to the transcript of his deposition. Defendants voiced no objection to either of these requests. The district court granted the requests based on the consent of both parties. However, plaintiff also requested that the district court allow him to include on appeal his requests for admissions forwarded to defendants, along with the exhibits to those requests and defendants' answers, his proposed joint pre-trial order, an attachment to plaintiff's first amended complaint, and an attachment to plaintiff's affidavit in support of a motion to continue the hearing on defendants' motion to dismiss or for summary judgment. Defendants objected to the addition of this material on appeal, and the district court denied this portion of plaintiff's motion.
 
 
 37
 Under Federal Rules of Appellate Procedure ("Fed.R.App.P.") 10(a), the record on appeal consists of "the original papers and exhibits filed in the district court, the transcript of the proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court." In general, the appellate court should have before it the records and facts considered by the district court. S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co., 678 F.2d 636, 641 (6th Cir.1982). See, e.g., In re Capital Cities/ABC, Inc., 913 F.2d 89, 96 (3d Cir.1990) ("[W]e do not take testimony, hear evidence or determine disputed facts in the first instance. Instead, we rely upon a record developed in those fora that do take evidence and find facts.") (quoting Sewak v. INS, 900 F.2d 667, 673 (3d Cir.1990)).
 
 
 38
 The district court has only a narrow band of discretion to change or modify the record on appeal. Fed.R.App.P. 10(e) allows modification of the record in only two instances; namely, when the parties dispute whether the record actually discloses what occurred in the district court and when a material matter is omitted by error or accident.[2] See also Jones v. Jackson Nat'l Life Ins. Co., 819 F.Supp. 1385, 1386 (W.D.Mich.1993); Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1165 (3d Cir.1986), cert. denied, 481 U.S. 1070 (1987) and USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1279 (9th Cir.1994) (stating that summary judgment record cannot be supplemented on appeal). This court has not allowed the rule to be used to add new evidence that substantially alters the record after a notice of appeal has been filed but has permitted only enough modification to ensure the accuracy of the record. S & E Shipping, 678 F.2d at 641. This court reviews only the materials and facts considered by the trial court in reaching its decision, and the "only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court." Jones, 819 F.Supp. at 1387 (quoting Fassett, 807 F.2d at 1165). See, e.g., Kirshner v. Uniden Corp., 842 F.2d 1074, 1077 (9th Cir.1988) (refusing to supplement the record with papers not filed with the district court or admitted into evidence); John Hancock Mutual Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir.1994) (denying motion to supplement the record with documents not before the district court) and Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1423 (10th Cir.1992) (same).
 
 
 39
 In this case, disregarding the corrections to typographical errors that both parties agreed were acceptable, plaintiff sought to add information to the record. Clearly, both parties did not agree that the information was necessary for the record on appeal to accurately reflect the proceedings in the lower court. The record as it stands, without the proposed additions, appears to be a more accurate indicator of the material considered by the trial court. This conclusion is buttressed by the language of the district court judge, who noted in his order denying plaintiff's motion that the materials plaintiff sought to have added to the record could have been made a part of the record before the court ruled but that they were "indisputably not a part of the record considered by [the] court." Therefore, the district court held, it was "powerless to so augment the record." J.A. 629. In addition, although plaintiff makes a perfunctory assertion that the materials were excluded by mistake or accident, he fails to support the assertion.
 
 
 40
 In Frank v. D'Ambrosi, we held that it was permissible to deny a motion to supplement the record on appeal if the court found that all the pleadings and attachments filed in the district court were in the record and available for the court's review in connection with the appeal. Frank, 944 F.2d 274, 275 (6th Cir.1991). We find that this standard has been met in this case. Plaintiff has failed to demonstrate error in the district court's application of the law to his request to supplement the record.
 
 
 41
 Similarly, we find no abuse of discretion in the court's failure to grant plaintiff additional time to supply exhibits and materials. The district court disposed of the issues presented by plaintiff on the basis of undisputed facts and applicable law. Had the court allowed plaintiff additional time, it would have created an unnecessary delay in the disposition of plaintiff's claims. Because plaintiff has not demonstrated reliance on clearly erroneous findings of fact or improper application of the law, we find plaintiff's claims of abuse of discretion meritless. Black Law Enforcement Officers, 824 F.2d at 479.
 
 III.
 
 42
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 We will treat the district court's disposition of plaintiff's claims as a grant of summary judgment even though the court purported to dismiss some of the claims pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6), for failure to state a claim. When the district court has considered evidence outside the pleadings in order to dispose of a plaintiff's claim, the standard of review for summary judgment applies. Fugarino v. Hartford Life and Accident Ins. Co., 969 F.2d 178, 182 (6th Cir.1992), cert. denied, 113 S.Ct. 1401 (1993); Friedman v. United States, 927 F.2d 259, 261 (6th Cir.1991). It is not dispositive that the district court referred to its own action as a dismissal for failure to state a claim; we look to the substance of the court's action, not the language alone. Bell v. Chesapeake & Ohio Ry., 929 F.2d 220, 221-222 (6th Cir.1991) (per curiam)
 In this case, the district court judge relied on the testimony presented at the hearing on defendants' motion to dismiss or for summary judgment. The record demonstrates that the judge could not discern the substance of plaintiff's claims from the pleadings alone. J.A. 448. Moreover, when the district court judge and plaintiff reviewed plaintiff's assertions, the judge allowed plaintiff to direct the court's attention to various documents and other evidence to support his claims. It is evident that the district court judge had before him more than the substance of the pleadings. Thus, although the court dismissed plaintiff's equal protection, federal statutory veterans' preference and age discrimination claims under Fed.R.Civ.P. 12(b)(6), the proper standard for our review is the summary judgment standard.
 
 
 [2]
 Fed.R.App.P. 10(e) provides in relevant part:
 If any difference arises as to whether the record truly discloses what occurred in district court, the differences shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties, by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals ... may direct that the omission or misstatement be corrected....